IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**MARC BOUTWELL; DAWN BOUTWELL**                                                      **PLAINTIFFS**

**v.**                                                                 **CAUSE NO. 3:11-CV-689-CWR-LRA**

**TIME INSURANCE COMPANY**                                                              **DEFENDANT**
**d/b/a Assurant**

## ORDER

Before the Court is the defendant's motion for judgment on the pleadings. Docket No. 26. The plaintiffs have responded, Docket Nos. 33-34, the defendant has replied, Docket No. 35, and the matter is ready for review. The motion will be granted in part and denied in part.

**I.      Factual and Procedural History**

The following allegations are drawn from the complaint and taken as true for purposes of the pending motion.

On March 1, 2008, Marc and Dawn Boutwell purchased a health insurance policy from Time Insurance Company, doing business as Assurant Health (hereinafter, "Time"). Docket No. 2, at 3. The policy covered the Boutwells' minor child, A.B. *Id.* A special rider excluded from coverage A.B.'s preexisting condition for a three-year period. *Id.* at 4.

More than three years later, in May 2011, the Boutwells made a claim under the policy to cover costs of an illness resulting from A.B.'s preexisting condition. *Id.* at 3. Time denied the claim. *Id.*

In September 2011, the Boutwells filed this suit against Time in the Circuit Court of Holmes County, Mississippi. *Id.* at 8. They contended that the three-year exclusion period was void under Mississippi law and that their claim arose after the three-year period ended. *Id.* at 4. The causes of action alleged were breach of the implied covenant of good faith and fair dealing, bad faith denial of insurance benefits, and failure to properly investigate the claim. *Id.* at 5-6. Time subsequently removed the suit to this Court, asserting diversity jurisdiction. Docket No. 1.

**II.     Present Arguments**

Time argues that the special exclusion always has and always will prohibit coverage for A.B.'s preexisting condition, which is called "vesicoureteral reflux," or "VUR." Docket No. 27.

While Mississippi Code § 83-9-49 requires preexisting conditions to be covered after 12 months of continuous insurance coverage, Time says that law does not apply to condition-specific exclusions like the one at issue. *Id.* at 4-13. It further contends that the exclusion did not automatically repeal after three years. *Id.* at 13-15.

The Boutwells acknowledge the exclusion but claim that § 83-9-49 controls and overrides any contrary language in the policy. Docket No. 34. In support, they point to a term in the policy that explicitly amends it to conform to state law. *Id.* at 3-5. The Boutwells also contend that they are entitled to discovery to prove that Time used exclusions like the one in question as a matter of course to evade § 83-9-49. *Id.* at 6-7. They disagree that Time's legislative history and public policy arguments are relevant or support Time's conclusions, since policy concerns also support coverage of preexisting conditions after 12 months' time. *Id.* at 8-11.[1]

### III. Standard of Review

The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks and citations omitted).

### IV. Discussion

The Mississippi statute at the heart of this dispute reads, in relevant part, as follows:

(2) Any individual hospital, health or medical expense insurance policy, hospital or medical service contract, health and accident insurance policy or any other insurance contract of this type which is delivered or issued for delivery in this state on or after January 1, 1994, shall not deny, exclude or limit benefits for a covered individual for losses due to a preexisting condition incurred more than twelve (12) months following the effective date of the individual's coverage. Any individual policy, contract or plan subject to this section shall not contain a definition of a preexisting condition more restrictive than the following:

(a) A condition that would have caused an ordinary prudent person to seek

---

[1] The arguments contained in the Boutwells' response brief suggest that the Boutwells have abandoned their theory that Time is obliged to pay the claim merely because the three-year exclusion period has ended.

>   medical advice, diagnosis, care or treatment during the twelve (12) months immediately preceding the effective date of coverage;
>
>   (b) A condition for which medical advice, diagnosis, care or treatment was recommended or received during the twelve (12) months immediately preceding the effective date of coverage;
>
>   (c) A pregnancy existing on the effective date of coverage.

Miss. Code § 83-9-49(2)(a)-(c).

The parties agree that no Mississippi court has resolved the questions this case presents. Time submits, though, that the Fifth Circuit has done so for Louisiana, which has a statute nearly identical to Mississippi's. *Wynn v. Washington Nat'l Ins. Co.*, 122 F.3d 266 (5th Cir. 1997). In that case, the Wynn family's application for health insurance disclosed that Beverly Wynn had previously pulled a muscle in her back. *Id.* at 267. The insurance company offered to write a policy for the Wynns on the express condition that it not cover losses "resulting from or caused by any injury to or disease or disorder of the spine or spinal region, fractures and cancer excepted, suffered by Beverly S. Wynn." *Id.* at 268. The Wynns agreed and purchased the policy. *Id.*

Two years later, Beverly Wynn underwent surgery on a cervical disc and filed a claim under the policy. *Id.* The claim was denied. *Id.* In the resulting litigation, she argued that a Louisiana statute prohibited the insurance company "from denying coverage for losses, due to a pre-existing condition, which are incurred more than 12 months after the effective date of coverage." *Id.* (citing La. Rev. Stat. § 22:215.12).

The district court granted the insurer summary judgment and the Fifth Circuit affirmed. *Id.* at 268-69. The appellate court reasoned that "[a]n exception endorsement is qualitatively different from a pre-existing conditions limitation." *Id.* at 269. The exception endorsement "is a separate and independent limitation on liability that the Wynns signed of their own accord as a condition to receiving insurance." *Id.* "The pre-existing conditions limitation operates separately and independently from the exception endorsement because it applies to conditions for which an endorsement has not been written and/or which were not disclosed on the application." *Id.*

The *Wynn* court emphasized, though, that Mrs. Wynn's surgery was not actually due to her preexisting condition. *Id.* This fact buttressed its conclusion that the exception endorsement operated independently from – and was perhaps more broad than – the preexisting conditions limitation. *Id.*

3

"Thus, *the endorsement does not operate to deny coverage for pre-existing conditions*; rather, as written, it excludes coverage for 'any injury to or disease, or disorder of the spine or spinal region, fractures and cancer excepted', regardless of the source or when incurred." *Id.* (emphasis added).

*Wynn* concluded with this:

> In addition, as Washington National correctly observes, the Wynns have not produced any summary judgment evidence to support their claim that, in order to avoid the reach of § 22:215.12, Washington National consistently uses similar endorsements to exclude coverage for pre-existing conditions revealed on an application. Consequently, there is no genuine issue of fact as to whether the endorsement is an "extension" of the pre-existing conditions limitation. On this record, it is not.

*Id.* A district court within the Fifth Circuit later read that language as suggesting "that evidence that an insurer consistently used elimination endorsements to avoid the reach of section 22:215.12 can create a genuine issue of fact as to whether the endorsement is an extension of the pre-existing conditions limitation in contravention of section 22:215.12 and Louisiana public policy." *Carthane v. Cont'l Cas. Co.*, No. 99-3107, 2000 WL 1201564, *3 (E.D. La. Aug. 23, 2000) (quotation marks omitted).[2]

Applying *Wynn* to the facts of our case does not lend itself to a straightforward conclusion. On one hand, its language was clear that exception endorsements like ours are separate and independent clauses of the policy entitled to full effect. There, as here, the endorsement was bargained-for by the parties. The Boutwells were entitled to reject it and seek health insurance from another company.

On the other hand, it seems relevant that the Wynns were not denied coverage of an actual preexisting condition: evidence in their case showed that the cervical surgery was not related to Mrs. Wynn's preexisting condition (a pulled back muscle). That exception endorsement operated like a categorical exclusion, like clauses that prohibit coverage for mental illness or elective cosmetic surgery claims. *E.g., Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010) (reasoning, where insurer denied coverage of gastric band-related treatment based upon policy

---

[2] Earlier in *Carthane*, that court wrote that "*Wynn* does not stand for defendants's proposition that elimination endorsements are never subject to section 22:215.12. Plaintiff likewise misreads *Wynn* by arguing that [it] stands for the proposition that one instance of excluding coverage for a preexisting condition revealed on an application violates section 22:215.12." *Carthane*, 2000 WL 1201564, at *3 (citations omitted).

language excluding from coverage surgeries related to morbid obesity, "[t]he exclusion that Dean [Health Plan] relied on here is properly understood as a restriction on the nature of benefits provided rather than one based on a preexisting condition."). As long as they comply with relevant statutes and public policy, of course, insurance companies may decline to cover categories of conditions.

In contrast, here, Time is using an exception endorsement that denies coverage specifically and exclusively for A.B.'s preexisting condition. It is not a categorical exclusion that bars coverage for things like mental illness, elective cosmetic surgery, or morbid obesity, nor is it even like the broad exception endorsement upheld in *Wynn*. Rather, Time's clause is narrowly tailored to the same preexisting condition that the Boutwells disclosed in their application.[3] This suggests that Time's exception endorsement may effectively operate to bar coverage of preexisting conditions for longer than 12 months, and in practice may run afoul of Mississippi Code § 83-9-49. *See Molnar v. Conseco Med. Ins. Co.*, 358 Ill. App. 3d 418, 427 (2005) (collecting cases where certain exception endorsements were held to violate state laws governing coverage of preexisting conditions).[4]

It is not possible to fully reconcile these competing principles. The exception exclusion is both entitled to deference as any other term in the insurance policy *and* operates in this situation to deny coverage for a preexisting condition after more than one year of A.B.'s continuous coverage.

---

[3] The briefing implies that the kind of illness at issue here, VUR, would be covered under Time's policy were it not for the exception endorsement. That is, the parties have not identified another policy term that would independently bar coverage for VUR claims.

Similarly, even with the exception endorsement, the policy would cover costs stemming from another family member's diagnoses with and treatment for VUR because the exception endorsement applies to A.B. only. Docket No. 27-2, at 30. Whereas mental illness or cosmetic surgery are not covered for A.B. or any other family member; those are truly categorical exclusions that apply across the board. Docket No. 27-1, at 27-28.

[4] It is not clear whether the exception endorsement's three-year term is significant. In *Wynn*, the challenged policy *permanently* excluded coverage of Mrs. Wynn's spinal disorders, which – once again – made the clause more akin to a categorical exclusion. In contrast, the fact that Time's exception endorsement was slated to last for 36 months (at a minimum) brings it closer to a time-limited restriction of preexisting condition coverage. Yet Time's endorsement did not automatically repeal after 36 months; the company retained discretion to continue it indefinitely. *See* Docket No. 27-2, at 30 ("REMOVAL OF THIS RIDER IS NOT AUTOMATIC. YOU MUST SUBMIT A SUPPLEMENTAL APPLICATION TO HAVE THE RIDER RECONSIDERED AFTER March 1, 2011.").

The plain language of Mississippi Code § 83-9-49 suggests that exclusionary periods for preexisting conditions may be satisfied. *See also In re Ranck*, Op. No. 93-0493, 1993 WL 294266 (Miss. A.G. July 1, 1993) ("Participating members who have satisfied a previous exclusionary period for preexisting conditions will not have to do so again."). Here, though, Time's exception endorsement was ambiguous as to whether it could ever be satisfied. The verbiage surrounding the three-year exclusionary period does not aid the Court in understanding the nature of this exception endorsement.

It may be possible, however, to craft a resolution that simultaneously honors Mississippi law and all of the language contained in *Wynn* and its progeny. *Wynn* supports that the exception endorsement presented in our case is clear, unambiguous, and entitled to deference as an independent and bargained-for term in the policy. Pursuant to that case, Time will be granted judgment on the pleadings as to Boutwells' claim that Time's denial of A.B.'s treatment in and of itself – without evidence of a pattern of similar denials of coverage – violates Mississippi Code § 83-9-49. *See Wynn*, 122 F.3d at 269; *Carthane*, 2000 WL 1201564, at *3.

At the same time, the Court recognizes that the present motion is one for judgment on the pleadings. In light of that posture, the Boutwells will be granted leave to amend their complaint and seek discovery on whether Time consistently uses exception endorsements like the one at issue to avoid the reach of § 83-9-49. *See Wynn*, 122 F.3d at 269; *Carthane*, 2000 WL 1201564, at *3.

Several reasons support that conclusion. First, unlike in *Wynn*, the claim denied here was actually one for treatment of a preexisting condition, meaning there is a factual predicate for considering *this* exception exclusion to effectively be an extension of the preexisting conditions clause. Second, as mentioned above, unlike *Wynn*, this Court is presented with a motion for judgment on the pleadings, not a motion for summary judgment. Although the deadline to amend the pleadings has passed, it is well-established that plaintiffs who may still have a viable avenue to recover should be granted leave to amend their complaint and make their "best case." *See Clay v. Epps*, No. 2:06-CV-56, 2006 WL 2669470, *3 (S.D. Miss. Sept. 18, 2006). In short, the fact-specific nature of this particular exception endorsement and the present stage of this litigation support granting leave to amend.

Finally, because the language of Mississippi Code § 83-9-49 is clear, it is not necessary to consider the parties' competing legislative history or public policy arguments. "[A] powerful line of Supreme Court authority suggests that legislative history should rarely be used in statutory interpretation, because only the text of the law has been passed by Congress, not the often-contrived history." *Stanley ex rel. Estate of Hale v. Trinchard*, 579 F.3d 515, 518 n.6 (5th Cir. 2009) (quotation marks and citations omitted). As a result, the Fifth Circuit has emphasized that "there is no reason to recite legislative history" when the statutory text is clear, in part because "as is often the case with legislative history, statements can be pulled from the record to support the contrary proposition as well." *Khalid v. Holder*, 655 F.3d 363, 371 (5th Cir. 2011) (citation omitted); *see*

*Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 377 (5th Cir. 2009) (collecting cases).

## V.     Conclusion

The motion for judgment on the pleadings is granted in part and denied in part. Within 10 days of the entry of this Order, counsel shall contact the Chambers of the Magistrate Judge for entry of new scheduling order which shall included a date by which the plaintiffs must file an Amended Complaint.

**SO ORDERED**, this the third day of January, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
